GIAVI ET AL. *v.* UNITED STATES (No. 2869) [1]

United States Court of Customs Appeals, December 5, 1927

*Allan R. Brown* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter* and *Reuben Wilson*, special attorneys, of counsel), for the United States.

[Oral argument October 14, 1927, by Mr. Brown and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, and HATFIELD, Associate Judges, BLAND, Associate Judge, participating in the decision by agreement of counsel

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgments of the United States Customs Court in protests 989993–G, 91485–G, and 13412–G.

The merchandise involved in protests Nos. 989993–G and 91485–G consisted of "*Romano* cheese." It was imported in loaves of 18 to 20 pounds each, packed in cases containing 8 loaves each.

The collector classified the merchandise as not legally marked, stamped, branded, or labeled in accordance with the provisions of section 304 (a) of the Tariff Act of 1922; and, accordingly, assessed an additional duty thereon of 10 per centum of its appraised value.

The importers protested the assessment of the additional duty.

T. D. 42510.

On the trial in the court below the importers, in protest 989993–G, called one Joseph Tolibia as a witness. He testified that he was the treasurer of F. N. Giavi (Inc.); that his company had been importing cheese for 17 years and that, prior to the passage of the Tariff Act of 1922, the collector had not required his company to mark the individual loaves of cheese; that the cheese was rather hard; and that each loaf was covered with a "coat of tallow or animal fat" to preserve it. He said in substance that each loaf of cheese had been marked prior to importation to indicate the country of origin by means of metal tags put into place by small nails; that upon receiving notice from the collector that the cheese was not legally marked, he examined a few of the cases and found that the metal tags had become loosened and had fallen from some of the loaves; that some were found loose in the cases, while others could not be found; and that, under the direction of the collector, he caused the loaves of cheese from which the tags were missing, which numbered about one-half of the importation, to be re-marked with new metal tags. He testified that, because of the character of the cheese, it could not be marked, stamped, or branded; and that paper labels would not adhere to the tallow coating.

Protest 91485–G of A. B. Labate, one of the appellants, was submitted to the court below on the record in protest 989993–G.

The trial court considered both cases on the testimony taken in No. 989993–G and found that, of the total number of loaves of cheese imported by the protestants, 50 per centum were legally marked at the time of importation and an equal number not legally marked. Judgments were entered accordingly.

It is claimed by appellants that the judgments should be reversed and that from the testimony in the record it should be held that the imported cheese was incapable of being marked, stamped, branded, or labeled so as to indicate the country of origin.

The pertinent part of section 304 (a) reads as follows:

SEC. 304. (a) That every article imported into the United States which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place, that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value

thereof; or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

It is argued that, as the law requires that the marking be as "nearly indelible and permanent as the nature of the article will permit," and, as it appears from the record that the imported cheese had been marked with metal tags prior to importation and that one-half of the tags had fallen off at the time of importation, and, as the collector was unable to suggest any more permanent method of marking the same, the court should have held, in view of the testimony in the case, that the imported cheese was incapable of being marked without injury.

The loaves of cheese were covered with a "coat of tallow or animal fat." However, it is not claimed that, for the purposes of this case, this substance should be considered as a container of the cheese, and of course we do not pass upon this question.

The merchandise was marked prior to importation; how long prior thereto does not appear. We are asked to hold that because the metal tags had fallen from 50 per centum of the loaves of cheese they and the other loaves could not be marked within the meaning of the statutory language. The imported articles were alike in character Fifty per centum of them were apparently permanently marked. At least they were marked abroad prior to exportation, and the tags were still in place at the time of importation. How much longer they might have remained unless deliberately removed does not appear. There is nothing in the record to indicate that they were not "permanently" marked within the meaning of the statute.

It is not contended that such marking injured the cheese. We must conclude, therefore, that each of the articles could have been marked as provided by statute. In any event we are unable to say that the finding of the court below was contrary to the weight of the evidence.

The merchandise involved in protest 13412–G consisted of *Provoloni* cheese. It was imported in loaves of 5 pounds each, packed in wooden cases. It was classified by the collector as not legally marked, stamped, branded, or labeled as provided by law, and assessed with an additional duty of 10 per centum of the appraised value thereof. Each loaf of cheese was marked while in customs custody by the importer by brass labels "fastened" thereon by means of nails.

The importer protested the assessment of the additional duty.

On the trial below Joseph Tolibia, testifying for the importer, said:

Q. You are familiar with the importation?—A. Yes, sir.
Q. What is it?—A. Provoloni cheese.
Q. How does it come—in what form?—A. In loaves of about five pounds.
Q. How is it packed?—A. Packed in wooden cases.
Q. Is there any wrapping or anything like that around the loaf?—A. No, sir.
Justice WAITE. How many to the case?
WITNESS. Fourteen and eighteen.

Q. What is the consistency of the cheese?—A. It is a soft cheese

Q. Can you describe it a little more definitely than that?—A. It is a soft cheese for eating purposes, for table purposes.

Q. Is it used by grating or some other way?—A. Just used for table purposes, not to be grated.

Justice WAITE. Is it softer than the ordinary American cheese?

WITNESS. About the same; harder than cream cheese.

Justice WAITE. It does not run off or float—it won't run off the plate?

WITNESS. No.

Q. How did you mark this when the collector advised you it had not been properly marked?—A. With a brass label.

Q. How was it fastened?—A. With two nails.

Q. And do the brass labels like that stay on for any length of time?—A. No.

Q. What is the nature of the surface of the loaf?—A. A very thin crust.

Justice ADAMSON. A hard crust, a thin, hard crust?

WITNESS. No; rather soft.

Justice WAITE. Is it as soft as Camembert?

WITNESS. No; a little harder.

Q. Is it possible to stencil or paint words on it, on the loaf?—A. No.

Q. Why not?—A. Because the surface of the cheese won't stand for it.

    *       *       *       *       *       *       *

Q. Can you stick a paper lable on the loaf?—A. No.

Q. How about branding, can you do that without injuring the cheese—burning the name on it?—A. No; because the crust is too thin entirely; it would go right through into the cheese.

Q. Have you been importing this kind of cheese all through these 17 years?—A. Yes.

Q. Did the collector ever require you to label the loaves of cheese of this kind before September 22, 1922?

    *       *       *       *       *       *       *

A. No; sir.

Mr. KLINGAMAN. That is all.

By Mr. HIGGINBOTHAM:

Q. This surface or this crust of this cheese, of what is that composed?—A. By the cheese itself. I really don't know what it is composed of on this particular variety of cheese.

Q. Do you know or don't you know what the composition of the crust or surface of that cheese is?—A. No.

Justice ADAMSON. Is it any different from the cheese itself?

WITNESS. Yes; it is.

Justice ADAMSON. Different stuff put upon the cheese?

WITNESS. Yes.

Q. It is more hard than the cheese, is it not, it is harder?—A. Just a little bit harder.

Q. Now, you take a die and press down upon that crust, that would be done without injury to the cheese?—A. Oh, no.

Q. What say?—A. No, sir.

Q. Why not?—A. Because the crust is so thin.

Q. Suppose you take a die not too deep and press into that crust "Made in Italy"?—A. You would not be able to see it.

Q. That is your answer. What color is this crust?—A. Brown—light brown.

Q. If you stenciled or painted on that crust "Made in Italy," would that injure the cheese?—A. No, sir.

Q. If you put a cloth label on that crust it would not injure the cheese?—A. A cloth label?

Q. Yes.—A. I don't think it would stick.

Q. I did not ask you whether it would stick or not. Would it injure the cheese?—A. No, sir.

Upon this testimony the trial court held against the importer and overruled the protest.

It is claimed by counsel for the appellant that the testimony clearly establishes that the loaves of cheese could not be marked, stamped, branded, or labeled with any degree of permanency without injury to the cheese.

We have examined the testimony with care; and because of its brevity have incorporated it in this opinion.

Counsel insists that there is no practical method of marking cheese of this character. Counsel may be right. However, we are not called upon to determine that question. The issue, as we understand it, is confined to the proposition that the judgment of the court below is contrary to the weight of the evidence.

The merchandise was classified by the collector as not legally marked, stamped, branded, or labeled as required by section 304 (a) *supra*. An additional duty of 10 per centum of its appraised value was assessed against the merchandise. The importer protested. Accordingly, upon the trial below, the burden of proof rested upon the importer to establish that the merchandise was not capable of being marked, stamped, branded, or labeled without injury. Has it met that burden? The court below answered in the negative and we think its conclusion was correct.

The merchandise was not marked, stamped, branded, or labeled prior to importation. The witness for the importer testified that the loaves of cheese were marked in customs custody by the importer by attaching metal tags by means of nails. In answer to the question, "And do the brass labels like that stay on for any length of time?" he said "No." We are unable to understand precisely what the question was intended to mean. It is very indefinite and does not in our opinion meet the issue. Moreover, there is no testimony in this record that the collector required the importer to mark the merchandise by means of metal tags to the exclusion of all other methods.

The witness described the merchandise as table cheese of about the same consistency as "ordinary American cheese." He testified that it could not be painted or stenciled; that neither paper nor cloth labels would stick to the loaf; and that it could not be branded.

No claim is made that, for the purposes of this case, the crust of the cheese should be considered as a container, and of course we do not pass upon this question.

We think it has been established that the articles were not capable of being stamped or branded; and that labels could not be fastened to the loaves by means of a mucilaginous substance. There is no

testimony, however, that suitable labels could not have been attached in some other manner without injury to the cheese.

We are of opinion that the finding of the court below is not contrary to the evidence, or against the weight thereof.

The judgments are *affirmed*.